## PHEBE ABBOT *versus* JOHN BAYLEY.

Where a feme covert, whose husband by his cruelty drove her from his house without providing any means for her support, came to this commonwealth and maintained herself here for more than twenty years as a single woman, the husband having always been a citizen of and resident in another of the United States and having since her expulsion married and cohabited with another woman, it was *held* that she was entitled to sue as a feme sole.

TROVER for a promissory note made by one Rogers to the plaintiff, dated December 3, 1823.

The defendant pleads in abatement, that the plaintiff, before and at the time of the purchase and service of the writ, was and now is under coverture of Peter Abbot, her husband, who is now living at Chester, in the State of New Hampshire.

The plaintiff replies, that at the time of her intermarriage with Peter A. on the 7th of March, 1782, he was a native citizen of New Hampshire, and at that time and long before was resident at Kingston in that State ; that in 1805, he, by his cruel treatment of the plaintiff, drove her from Kingston, the place of their residence, without any means of necessary provision or support, and that he has never since that time corresponded with her nor in any manner provided her with any support, but she has lived separate and apart from him, within this commonwealth, and maintained herself by her labor as a single woman ; and further, that he, from the time of their intermarriage to the present time, has continued a citizen of New Hampshire and resided therein, and after the expulsion of the plaintiff from his house, to wit, August 9, 1805, he, according to the form of law in that State, married one Susanna Mills, with whom he has ever since cohabited and now cohabits, and by whom he has had several children ; she further says, that the note in question was given to her as the proceeds of her labor since her separation from her husband and that she has no other means of subsistence than her daily labor.

The defendant rejoins, that the husband, from the time of his birth, has been and now is a citizen of the United States, and now resides therein, and has not at any time renounced or abjured his allegiance and fidelity to the United States, or

8 *

Abbot
v.
Bayley.

been exiled, outlawed, or banished from the United States, or in any other way released or discharged from his allegiance thereto.

To this there was a general demurrer and joinder.

Jan. 10th, in
Suffolk.

*Moseley,* in support of the demurrer, said that wherever the husband has permanently renounced his marital rights and is without the jurisdiction of our courts, the wife may sue as a feme sole. Reeve's Dom. Rel. 99 ; 1 Dane's Abr. 335. In *Gregory* v. *Paul,* 15 Mass. R. 31, the husband and wife were both aliens, and the husband had never been within the United States. That case will govern the present, unless the circumstance, that here the husband was a citizen of one of the United States, instead of being an alien, makes a difference ; but it is apprehended, that on this question, New Hampshire must be regarded as a foreign state. *Shelby* v. *Guy,* 11 Wheat. 361. He referred to the cases cited in *Gregory* v *Paul* ; also to *Farrer* v. *The Countess of Granard,* 1 New Rep. 80.

*Gerrish,* for the defendant, contended that New Hampshire was not to be considered as a foreign state, since a citizen of one of the United States is entitled to all the privileges and immunities of citizens in the several States ; and that it would be against public policy to sustain this action.

The opinion of the Court was drawn up by

April term
1828.

PARKER C. J. The question is, whether the replication is an answer to the plea in abatement of coverture of the plaintiff.

If the parties to the marriage lived within this Commonwealth, it is certain that the facts stated in the replication would not avoid the plea of coverture ; for by the plaintiff's expulsion from the house of her husband she would have carried with her a credit against him to the extent of her necessary support, [1] and furthermore, might have obtained a divorce *a mensa et thoro,* and a reasonable alimony out of his estate. His second marriage would have been absolutely void, and she might have been divorced *a vinculo,* and been entitled to dow-

---

[1] See 2 Kent's Comm. (3d ed.) 149 ; *Montague* v. *Benedict,* 3 Barn. & Cressw. 631 ; *Emery* v. *Emery,* 1 Young & Jerv. 501 ; *Houliston* v. *Smyth,* 3 Bingh. 127 ; 10 Moore, 482 ; 2 Carr. & Payne, 22.

er and otherwise been provided for out of his estate. But without a divorce the coverture would continue, and she could neither sue nor be sued as a feme sole.

By the statute of New Hampshire respecting marriage and divorce, passed February 17, 1791, among the causes of divorce from the bonds of matrimony, is where the husband shall willingly absent himself from the wife for the space of three years together, without making suitable provision for her support and maintenance, where it is in his power so to do. And probably where there was an expulsion of the wife from his house, and a continual refusal to admit her, this would be construed to be a voluntary desertion on his part.

Now shall the separation stated in the replication, the plaintiff having come within this Commonwealth and resided here for twenty-three years without any intercourse with her husband, gaining her own living by her labor, make her a feme sole within this State?

In the case of *Gregory* v. *Paul* the circumstances of Mrs. Gregory were very similar to those which appear in the present case. Her husband and she were British subjects, living in England, until by his neglect and ill treatment she was induced to leave him and come to this country. She was allowed to maintain an action for a legacy, and recover, notwithstanding coverture was pleaded, her husband being alive, the case being assimilated to the English cases of abjuration, exile or transportation ; for though the husband remained at home, and the wife left her home, yet her abandonment of home being compulsory, in order to obtain a living by her industry, it was thought her case was brought within the spirit of the rule laid down in the several cases cited in the opinion of the Court.

Is there any difference between the case of *Gregory* v. *Paul* and the one before us, arising from the political relation or connexion between the several States composing the federal union? By the provision of the constitution of the United States, that the citizens of each State shall enjoy all the privileges and immunities of the citizens of every other State, are the jurisdictions and governments so amalgamated, that they are not in any respect to be considered as foreign to each

other ? In all national matters they are, in many respects, one and the same, being subject to the same laws and the same government ; but in all matters of domestic regulation they may be considered as foreign ; as for instance, in all their criminal jurisdiction and rules affecting property, except so far as either is subject to the laws of the United States.

Before the adoption of the national constitution, if a husband, of Massachusetts, deserted his wife and removed into another State, making no provision for her, and forbidding her to follow him, assuming a new marriage relation *de facto* in his adopted State, the wife remaining here working for her support, he exercising all the rights of a citizen of the other State and never intending to return, would not this amount to an abjuration of his native State, so that his wife might have the privileges and be liable to the burdens of a feme sole here ? We think it would. Does then the union of the States, or the provisions in the constitution referred to, make a difference ? The jurisdiction of the several States as such, are distinct, and in most respects foreign. The constitution of the United States makes the people of the United States subjects of one government *quoad* every thing within the national power and jurisdiction, but leaves them subjects of separate and distinct governments. The privileges and immunities secured to the people of each State in every other State, can be applied only in case of removal from one State into another. By such removal they become citizens of the adopted State without naturalization, and have a right to sue and be sued as citizens ; and yet this privilege is qualified and not absolute, for they cannot enjoy the right of suffrage or of eligibility to office, without such term of residence as shall be prescribed by the constitution and laws of the State into which they shall remove. They shall have the privileges and immunities of citizens, that is, they shall not be deemed aliens, but may take and hold real estate, and may, according to the laws of such State, eventually enjoy the full rights of citizenship without the necessity of being naturalized. The constitutional provision referred to is necessarily limited and qualified, for it cannot be pretended that a citizen of Rhode Island coming into this State to live, is *ipso facto* entitled to the full privileges of a citizen.

<div style="float:right">Abbot
v.
Bayley.</div>

if any term of residence is prescribed as preliminary to the exercise of political or municipal rights. The several States then, remain sovereign to some purposes, and foreign to each other, as before the adoption of the constitution of the United States, and especially in regard to the administration of justice, and in the regulation of property and estates, the laws of marriage and divorce, and the protection of the persons of those who live under their jurisdiction. No process can go from one State into another, nor can the citizen of one State be made amenable to the laws of another, unless he come within its jurisdiction. Why then should not New Hampshire be considered a foreign state in reference to the case before us, as well as Canada or Nova Scotia ? The proximity can make no difference, for the line of jurisdiction is, in a political view, an impassable barrier. If a woman of New Orleans, situated like the plaintiff, could be dealt with as a feme sole, so can the plaintiff ; and if New Hampshire is in relation to this subject a foreign government, then the case of *Gregory* v. *Paul* must decide this, for in all other respects they are parallel.

This plaintiff was driven from her husband and her home more than twenty years ago. She has all that time acted as a feme sole, and been treated as such by those with whom she has had dealings. Her husband, so far from supporting her, has considered the connexion extinct, and has married and lives with another woman. It is agreed that this separa tion was caused by the cruelty and ill usage of the husband. He has obliged the plaintiff to live apart from him, and to get her own living by trading ; and she has sustained herself as a feme sole within this Commonwealth. According to the decision in the case of *Gregory* v. *Paul*, [1] she is entitled to maintain this action.

<div style="text-align:right">*Rejoinder adjudged bad.*[2]</div>

---

[1] See 15 Mass. R. (Rand's ed.) 35, note *a*.

[2] See 2 Kent's Comm. (3d ed ) 154 to 158, *Bean* v. *Morgan*, 4 M'Cord, 148.

The principle of the decision in the text has been extended by the Revised Statutes to all cases where a married woman shall come from any other State or country into this State, without her husband, he having never lived with her in this State. *C.* 77, § 18.